IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN SANDERS,

       Petitioner,                        No. CIV S-10-2470 JAM EFB P

    vs.

GARY SWARTHOUT, et al.,

       Respondents.               <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding *in propria persona* with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges the decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole at a parole consideration hearing held on August 6, 2009.  He claims that the Board's 2009 decision finding him unsuitable for parole violated his federal right to due process and the Ex Post Facto Clause.

        As discussed below, the United States Supreme Court has held that the only inquiry on federal habeas review of a denial of parole is whether the petitioner has received "fair procedures" for vindication of the liberty interest in parole given by the state.  *Swarthout v. Cooke*, 562 U.S. \_\_\_, No. 10-333, 2011 WL 197627, at *2 (Jan. 24, 2011) (per curiam).  In the context of a California parole suitability hearing, a petitioner receives adequate process when he/she is allowed an opportunity to be heard and a statement of the reasons why parole was

1

denied. *Id.* at **2-3 (federal due process satisfied where petitioners were "allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied"); *see also Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 16 (1979).  For the reasons that follow, applying this standard here requires that the petition for writ of habeas corpus be denied on petitioner's due process claim.

**I. Procedural Background**

Petitioner is confined pursuant to a 1995 judgment of conviction entered against him in the Alameda County Superior Court following his conviction on a charge of second degree murder.  Pet. at 1.[1]  Pursuant to that conviction, petitioner was sentenced to fifteen years to life in state prison. *Id.*

The parole consideration hearing that is placed at issue by the instant petition was held on August 6, 2009.  Petitioner appeared at and participated in the hearing. *Id.* at 44-136.  Following deliberations held at the conclusion of the hearing, the Board panel announced their decision to deny petitioner parole for seven years and the reasons for that decision. *Id.* at 138-52.

Petitioner challenged the Board's 2009 decision in a petition for writ of habeas corpus filed in the Alameda County Superior Court.  Answer, Ex. A.  The Superior Court denied that petition in a decision on the merits of petitioner's claims.  Pet. at 33-37.  Petitioner subsequently challenged the Board's 2009 decision in a petition for writ of habeas corpus filed in the California Court of Appeal and a petition for review filed in the California Supreme Court.  Answer, Exs. B, C.  Those petitions were summarily denied.  Pet. at 39, 40.

**II. Standards for a Writ of Habeas Corpus**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28

---

[1] Page number citations such as these are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. *Early v. Packer*, 537 U.S. 3, 7 (2002) (*citing Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state

3

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

**III. Petitioner's Claims**

    **A. Due Process**

Petitioner's first claim is that the Board's 2009 decision finding him unsuitable for parole violated his Fourteenth Amendment right to due process because it was not based on "some evidence" that he posed a current risk of danger if released from prison. Pet. at 9-23.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). *See also Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981); *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *see also Hayward v. Marshall*, 603 F.3d 546, 561 (9th Cir. 2010) (en banc). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." *Greenholtz*, 442 U.S. at 12. *See also Allen*, 482

U.S. at 376-78.

California's parole scheme[2] gives rise to a liberty interest in parole protected by the federal due process clause. *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole."); *see Swarthout v. Cooke*, No. 10-333, 562 U.S. ___, 2011 U.S. LEXIS 1067, *5-6 (Jan. 24, 2011) (per curiam) (stating that the Ninth Circuit's determination that California's parole law creates a liberty interest protected by the federal due process clause "is a reasonable application of our cases."). However, the United States Supreme Court has held that correct application of California's "some evidence" standard is not required by the federal Due Process Clause. *Swarthout*, 2011 WL 197627, at *2. Rather, this court's review is limited to the narrow question of whether the petitioner has received adequate process for seeking parole. *Id.* at *3. ("Because the only federal right at issue is procedural, the relevant inquiry is what process [petitioner] received, not whether the state court decided the case correctly.") Adequate process is provided when the inmate is allowed a meaningful opportunity to be heard and a statement of the reasons why parole was denied. *Id.* at **2-3 (federal due process satisfied where petitioners were "allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied"); *see also Greenholtz*, 442 U.S. at 16.

Here, the record reflects that petitioner was present at the 2009 parole hearing, that he participated in the hearing, and that he was provided with the reasons for the Board's decision to deny parole. Pursuant to *Swarthout*, this is all that due process requires. Accordingly, petitioner is not entitled to relief on his due process claim.

////

---

[2] In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness. *In re Lawrence*, 44 Cal.4th 1181, 1205-06, 1210 (2008); *In re Rosenkrantz*, 29 Cal.4th 616, 651-53 (2002).

5

**B. Ex Post Facto**

In his second ground for relief, petitioner claims that the Board's application of a change in California Penal Code § 3041.5(b)(2)[3] to delay his next parole hearing for a period of seven years violated the Ex Post Facto Clause of the United States Constitution. Pet. at 22-25; Traverse at 13-14. He argues that he had "a constitutional right for the Board to still have the discretion to provide him a hearing annually or two years after a parole denial." Pet. at 24.

Under the statute as it existed prior to the enactment of "Marsy's Law," indeterminately-sentenced inmates like petitioner were denied parole for one year unless the Board found, with stated reasons, that it was unreasonable to expect that parole could be granted the following year, in which case the subsequent hearing could be extended up to five years. Cal. Pen. Code § 3041.5(b)(2) (2008). However, at his 2009 parole hearing petitioner was subject to the terms of the amended statute, which authorizes denial of a subsequent parole hearing for seven, ten, or even fifteen years. Cal. Pen. Code, § 3041.5(b)(3) (2010). Petitioner asserts that application of the extended deferral period violates the Ex Post Facto Clause because it increases the risk that he will serve a longer prison term than he would have served under the prior statute. Pet. at 23. He points out that Marsy's Law appears to eliminate the Board's authority to schedule his next parole suitability hearing within the following three years. *Id.* at 23-24.

In the only reasoned state court decision on this claim, the California Superior Court rejected petitioner's arguments:

> Finally, Petitioner also contends that Marsy's Law, which became effective before his 2009 parole determination hearing, violates the *ex-post facto* prohibition. This contention also lacks merit. Retroactive changes to a state's parole laws, in some instances, may be violative of the Ex Post Facto Clause. (*Garner v. Jones* (2000) 529 U.S. 244, 250 (*Garner*).) When a statutory change

---

[3] The change to California Penal Code § 3041.5(b)(2) resulted from the passage of Proposition 9 in 2008. The statutes enacted and statute modifications made pursuant to Proposition 9 are collectively known as "Marsy's Law."

6

"creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes," there is no *ex post facto* violation. (*Cal. Dept. of Corrections v. Morales* (1995) 514 U.S. 499, 509 (*Morales*).) The dispositive issue is whether the retroactive application of the change in parole law "creates a significant risk of prolonging [a prisoner's] incarceration." (*Garner, supra*, 529 U.S. at p. 251.) Petitioner has not so shown, on the face of the statute or as applied to his case.

The latest amendments to subdivision (b) of section 3041.5 that are at issue do not alter the definition of Petitioner's crime, so the question remains whether the changes increase the punishment for Petitioner's criminal acts. The United States Supreme Court addressed a similar question in *Morales*, which involved a defendant who had committed murder while on parole for a prior murder. The Supreme Court found that the amendments to the statute as applied to Morales did not violate the Ex Post Facto Clause, holding that the amendment created "only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes." (*Morales, supra*, 514 U.S. at p. 509.)

The Supreme Court revisited retroactive changes in laws governing parole suitability hearing [sic] five years later. In *Garner*, when the defendant committed his offense, the rules of the Georgia Board of Pardons and Paroles ("Georgia Board") required reconsideration of parole to take place every three years. (*Garner, supra*, 529 U.S. at p. 247.) The Georgia Board subsequently amended its rules to provide that reconsideration hearings would take place at least every eight years. (*Id.*) The Supreme Court found that the change in the rules survived the *ex post facto* facial challenge. (*Id.*) The Supreme Court reiterated that the Ex Post Facto Clause should not be employed for "the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures." (*Garner, supra*, 529 U.S. at p. 252.)

Petitioner claims that Marsy's Law violates the *ex post facto* clause as applied to him. Under the previous statute, a prisoner could have a suitability hearing within a year of the denial, and now the statute exposes prisoners to additional imprisonment of three, five, seven, ten or fifteen years. Petitioner is only entitled to parole if he no longer poses an unreasonable threat to public safety, regardless of the time served. As Petitioner concedes, he has received multi-year    [sic] The 2009 denial of parole was based on several factors, including his institutional disciplinary history. Therefore, based on the number of factors on which the Board relied upon for finding that Petitioner is an unreasonable risk of danger to the public if released on parole, it is unlikely that the Board would have given Petitioner a shorter denial if the statute so allowed.

Pet. at 35-37.

The United States Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10. A law violates the Ex Post Facto Clause of the United States Constitution if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. *Collins v. Youngblood*, 497 U.S. 37, 52 (1990). The Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Himes v. Thompson*, 336 F.3d 848, 854 (9th Cir. 2003) (quoting *Souch v. Schaivo*, 289 F.3d 616, 620 (9th Cir. 2002)). *See also Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995). The Ex Post Facto Clause is also violated if: (1) state regulations have been applied retroactively to a defendant; and (2) the new regulations have created a "sufficient risk" of increasing the punishment attached to the defendant's crimes. *Himes*, 336 F.3d at 854. Not every law that disadvantages a defendant is a prohibited ex post facto law. The retroactive application of a change in state parole procedures violates ex post facto only if there exists a "significant risk" that such application will increase the punishment for the crime. *See Garner v. Jones*, 529 U.S. 244, 259 (2000).

California Penal Code section 3041.5 has been amended several times since the date of petitioner's conviction to allow for longer periods of time between parole suitability hearings. Ex Post Facto challenges to those amendments have all been rejected. *See Morales*, 514 U.S. at 509 (1981 amendment to Cal. Penal Code § 3041.5, which increased maximum deferral period of parole suitability hearings to five years did not violate the Ex Post Facto Clause because it simply altered the method of setting a parole release date and did not create a meaningful "risk of increasing the measure of punishment attached to the covered crimes"); *Watson v. Estelle*, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (not a violation of the Ex Post Facto Clause to apply § 3041.5(b)(2)(A) to prisoners sentenced to life imprisonment prior to the implementation of

8

1  California's Determinate Sentence Law in 1977); *Clifton v. Attorney General Of the State of*
2  *California*, 997 F.2d 660, 662 n.1 (9th Cir. 1993) (same). *See also Garner,* 529 U.S. at 249
3  (upholding Georgia's change in the frequency of parole hearings for prisoners serving life
4  sentences, from three to eight years, in an action brought pursuant to 42 U.S.C. § 1983);
5  *Wilkinson v. Dotson*, 544 U.S. 74 (2005) (holding that inmates are not required to bring their
6  challenges to the constitutionality of state parole procedures in habeas petitions exclusively, but
7  may pursue their claims in § 1983 actions).

8  Recently, the Ninth Circuit overturned a district court decision granting preliminary
9  injunctive relief to plaintiffs in a class action seeking to prevent the Board from enforcing the
10 amended deferral periods established by Marsy's Law. *Gilman v. Schwarzenegger*, ___ F.3d
11 ___, No. 10-15471, 2011 WL 198435 (9th Cir. Jan.24, 2011). The court found it unlikely that
12 plaintiffs would succeed on the merits of their underlying challenge premised on the Ex Post
13 Facto Clause. The court initially compared and contrasted Marsy's Law with existing Supreme
14 Court precedent:

15 > Here, as in *Morales* and *Garner*, Proposition 9 did not increase the statutory punishment for any particular offense, did not change the
16 > date of inmates' initial parole hearings, and did not change the standard by which the Board determined whether inmates were
17 > suitable for parole. However, the changes to the frequency of parole hearings here are more extensive than the change in either
18 > *Morales* or *Garner*. First, Proposition 9 increased the maximum deferral period from five years to fifteen years. This change is
19 > similar to the change in *Morales* (i.e., tripled from one year to three years) and the change in *Garner* (i.e., from three years to
20 > eight years). Second, Proposition 9 increased the minimum deferral period from one year to three years. Third, Proposition 9
21 > changed the default deferral period from one year to fifteen years. Fourth, Proposition 9 altered the burden to impose a deferral
22 > period other than the default period . . . . Neither *Morales* nor *Garner* involved a change to the minimum deferral period, the
23 > default deferral period, or the burden to impose a deferral period other than the default period.
24

25 2011 WL 198435, at *5. However, the Ninth Circuit found these distinctions non-dispositive
26 due to the availability of advance parole hearings at the Board's discretion, reasoning that, "as in

*Morales*, an advance hearing by the Board 'would remove any possibility of harm' to prisoners because they would not be required to wait a minimum of three years for a hearing ." *Id.* at *6 (quoting *Morales*, 514 U.S. at 513). The Ninth Circuit concluded that plaintiffs had failed to demonstrate a significant risk that their incarceration would be prolonged by application of Marsy's Law, and thus found that plaintiffs had not established a likelihood of success on the merits of their ex post facto claim.[4]

In light of these cases, the state court's rejection of petitioner's Ex Post Facto claim was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent. Therefore, petitioner is not entitled to habeas relief on that claim.

**IV.  Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); *Hayward v.*

---

[4] One district court has dismissed a petitioner's challenge to Marsy's Law on the ground that it improperly duplicates the class action claim still pending on the merits in *Gilman*. *See Bryant v. Haviland*, No. CIV S-09-CV-3462 GEB CHS P, 2011 WL 23064, *2-5,15 (E.D.Cal., Jan.4, 2011).

*Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board).

DATED: March 23, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

11